UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENISE ANNETTE POOL, <br>     Plaintiff, <br>     v. <br> CAROLYN W. COLVIN, <br>     Defendant. | Case No. 15-cv-02061-WHO <br><br> **ORDER ON PLAINTIFF'S MOTION TO REMAND** <br> Re: Dkt. No. 13 |

## INTRODUCTION

Plaintiff Denise Annette Pool seeks Social Security disability insurance benefits due to her physical and mental impairments. On October 24, 2013, an Administrative Law Judge ("ALJ") denied Pool's claim for benefits. Approximately five months later, Pool attempted suicide. In her direct appeal to the Appeals Council, Pool included hospitalization records relating to her suicide attempt. The Appeals Council found those records irrelevant to the ALJ's decision, as they "concerned a subsequent time period." Pool now moves for a Sentence Six remand to the Commissioner to consider the hospitalization records, additional medical records, and an October 9, 2015 ALJ decision granting Pool disability benefits as of April 12, 2014.

I must decide whether the new evidence is material to the existence and severity of Pool's mental impairments at the time of the ALJ's 2013 decision and therefore warrants remand. I conclude that the hospitalization records and other medical records are material because they illustrate the severity of Pool's mental impairments at the time of the 2013 ALJ decision and they could not have been obtained until after Pool's suicide attempt. The 2015 ALJ decision is not material because it does not bear on Pool's condition up to October 24, 2013. Therefore, for the reasons stated below, Pool's motion to remand is GRANTED IN PART and DENIED IN PART.

**BACKGROUND**

I.   **PROCEDURAL HISTORY**

On October 26, 2011, Denise Annette Pool filed a Title II application for disability insurance benefits, alleging disability beginning August 10, 2011. Administrative Record ("AR") 172-73. Pool's claim was denied initially on March 1, 2012, AR 120-24, and upon reconsideration on November 7, 2012. AR 127-31. Pool requested and was granted a hearing by an ALJ. AR 132-41. The hearing took place on September 11, 2013, and on October 24, 2013, the ALJ issued an unfavorable decision. AR 25. Pool appealed and, after a suicide attempt in April 2014, submitted new evidence from the hospitalization that followed. AR 8. On March 16, 2015, the Appeals Council declined review of the ALJ's decision, making the October 24, 2013 decision final. AR 1-6. The Appeals Council specifically declined to consider the new hospitalization records on the grounds that they were "about a later time," and therefore did "not affect the decision about whether [Pool was] disabled beginning on or before October 24, 2013." AR 2.

On May 7, 2015, Pool filed her Complaint for judicial review under 42 U.S.C. §405(g). Dkt. No. 1. On March 22, 2016, Pool filed a Motion for Sentence Six Remand and in the Alternative for a Revised Summary Judgment Briefing Schedule ("Mot."). Dkt. No. 13. The matter was fully briefed as of May 27, 2016. Dkt. Nos. 17, 18.

II.   **THE ADMINISTRATIVE LAW JUDGE'S DECISION**

Pool based her claim of disability on several mental and physical ailments: seizures, migraines, anti-cardiolipin antibody syndrome, transichemic attack (TIA), PFO, insomnia, an anxiety disorder, cognitive impairment, depression, post-traumatic stress disorder, and dyslexia. AR 200. The ALJ found that Pool had the following severe impairments: "a seizure disorder, migraine headaches, a history of pulmonary embolism secondary to anti-phospholipid antibody syndrome on Coumadin, an affective disorder, an anxiety disorder, and borderline intellectual functioning." AR 21-22.[1]

---

[1] The ALJ did not specify what affective disorder he considered severe, but the ALJ's opinion repeatedly notes that Pool was diagnosed with depression. AR 27-30.

In reaching his decision, the ALJ found that claimant's mental impairments did not meet or medically equal the criteria of listings 12.02 (organic mental disorders), 12.04 (affective disorders including depression), 12.06 (anxiety disorders), and 12.09 (substance addiction disorders). AR 23. Under the "Paragraph B" analysis, the ALJ determined that plaintiff had no restrictions on the activities of daily living; had mild to moderate difficulties with social functioning; had mild to moderate difficulties with concentration, persistence, or pace; and no evidence of episodes of decompensation. AR 23-24.[2] Paragraph B was not satisfied because the ALJ did not find that Pool had at least two "marked" limitations or one "marked" limitations plus repeated episodes of decompensation. AR 24. For the "Paragraph C" analysis, under 12.02, medical evidence did not support loss of cognitive abilities combined with marked limitations and decompensation; under 12.04, medical evidence did not show a chronic disease or at least 2 years duration with repeated episodes of decompensation or residual disease process;[3] under 12.06, there was no evidence Pool was completely unable to function outside the home; and under 12.09 there was insufficient evidence of behavioral or physical changes related to substance abuse. AR 24-25.

After considering the entire record, the ALJ issued an unfavorable decision. He found that despite Pool's impairments, she had the residual capacity to perform a full range of unskilled work with limitations on her interaction with the public and on tandem work with co-workers. AR 25.

## III.   THE SUICIDE ATTEMPT

On April 12, 2014, Pool attempted suicide by overdosing on Vicodin and Topamax pills. Declaration of Robert C. Weems, Ex. 1 [Dkt 14-1] at 5. Pool had intended to drink a bottle of

---

[2] Under listing 12.04 for affective disorders, Paragraph B requires a showing of limitations "[r]esulting in at least two of the following: 1. Marked restriction of activities of daily living; or 2. Marked difficulties in maintaining social functioning; or 3. Marked difficulties in maintaining concentration, persistence, or pace; or 4. Repeated episodes of decompensation, each of extended duration." 20 C.F.R. § Pt. 404, Subpt. P, App. 1.

[3] Under listing 12.04 for affective disorders, Paragraph C requires: "Medically documented history of a chronic affective disorder of at least 2 years' duration that has caused more than a minimal limitation of ability to do basic work activities, with symptoms or signs currently attenuated by medication or psychosocial support, and one of the following:1. Repeated episodes of decompensation, each of extended duration; or 2. A residual disease process that has resulted in such marginal adjustment that even a minimal increase in mental demands or change in the environment would be predicted to cause the individual to decompensate; or 3. Current history of 1 or more years' inability to function outside a highly supportive living arrangement, with an indication of continued need for such an arrangement." 20 C.F.R. § Pt. 404, Subpt. P, App. 1.

alcohol with the pills, but lost it. *Id.* at 19. After several hours her husband came home, found her vomiting, and called the police. *Id.* Shortly after being hospitalized, Pool explained: "I was not feeling good," stating that it was "seemingly a hopeless situation," and "I didn't see what's wrong with taking your own life." *Id.* Pool stated that "[e]ven my own therapist did not know I was suicidal," because she had not told her therapist that she was suicidal. *Id.* at 2. She stated, "I didn't realize suicidal thoughts were abnormal. They were normal for me." *Id.*

### IV.  REVIEW BY THE APPEALS COUNCIL

Pool appealed the October 24, 2013 decision of the ALJ. AR 13. She submitted hospitalization records related to her suicide attempt, dating from April 14, 2014 through June 6, 2014, in support of her appeal. AR 2 (Ex. 1 to Weems Decl.). On March 16, 2015, the Appeals Council denied review of the ALJ decision. Regarding the new evidence, the Appeals Council stated that "[w]e also looked at treatment records for the period April 16, 2014 through June 6, 2014 from Aurora Hospital (46 pages). The Administrative Law Judge decided your case through October 24, 2013. This new information is about a later time. Therefore, it does not affect the decision about whether you were disabled beginning on or before October 24, 2013." AR 2.

### V.  SUBSEQUENT GRANT OF TITLE II BENEFITS

After Pool's first claim was denied, she filed another Social Security disability claim. Weems Decl., Ex. 4 [Dkt. No. 14-4]. This claim was approved on October 9, 2015 by the Commissioner on initial review, due to the combination of Pool's mental and physical impairments. *Id.* The Commissioner found that the onset of disability was April 12, 2014, the date of Pool's attempted suicide. *Id.*

### VI.  DISTRICT COURT ACTION AND THE ADDITIONAL EVIDENCE

Pool now seeks a Sentence Six remand, asking the court to remand this case to the Commission and order that the ALJ consider the new evidence consisting of: (1) the April – June 2014 hospitalization records ("hospitalization records") relating to Pool's suicide attempt; (ii) a July 20, 2015 "retrospective" opinion from Pool's treating psychologist Dr. Malnekoff ("Dr. Malnekoff opinion"); (iii) medical records dated from December 2014 through May 2015, from Dr. Shah, relating to Pool's increased medication requirements for depression ("Dr Shah

4

records"); and (iv) an October 9, 2015 finding of disability by the SSA on her subsequent application for disability.  Weems Decl., Exs. 1-4 [Dkt. Nos. 14-1 to 14-4].[4]

## LEGAL STANDARD

### I. REVIEW BY AND NEW EVIDENCE SUBMITTED TO THE APPEALS COUNCIL

Under 20 C.F.R. § 404.967, "[i]f [a claimant] or any other party is dissatisfied with the hearing decision or with the dismissal of a hearing request, [the claimant] may request that the Appeals Council review that action.  The Appeals Council may deny or dismiss the request for review, or it may grant the request and either issue a decision or remand the case to an administrative law judge."  "The Appeals Council will consider all the evidence in the administrative law judge hearing record as well as any new and material evidence submitted to it that relates to the period on or before the date of the administrative law judge hearing decision.  If [the claimant] submit[s] evidence that does not relate to the period on or before the date of the administrative law judge hearing decision, the Appeals Council will explain why it did not accept the additional evidence and will advise [the claimant] of [their] right to file a new application."  20 C.F.R. § 404.976.

### II. SENTENCE SIX REMAND

The sixth sentence of 42 U.S.C. § 405(g) states, in relevant part, that "[t]he court . . . may at any time order additional evidence to be taken before the Commissioner of Social Security, but only upon a showing that there is new evidence which is material and that there is good cause for the failure to incorporate such evidence into the record in a prior proceeding; and the Commissioner of Social Security shall, after the case is remanded, and after hearing such additional evidence if so ordered, modify or affirm the Commissioner's findings of fact or the Commissioner's decision. . . ."  Evidence is material if it has a "reasonable possibility" of changing the outcome of the present case.  *Booz v. Sec'y of Health & Human Servs.*, 734 F.2d

---

[4] The declaration of claimant's counsel appears to seek remand for consideration of specifically identified "reports" dated from June through August 2015 that were "referenced" in the October 9, 2015 decision.  Weems Decl., ¶ 5.  However, none of those documents has been provided for my review and, therefore, I cannot make a determination on their materiality.  For that reason, I do not address or consider them in this decision.

1378, 1381 (9th Cir. 1984). To warrant a remand, new evidence of a psychological condition must be material to the claimant's condition as it existed at or before the disability hearing. *Sanchez v. Sec'y of Health & Human Servs.*, 812 F.2d 509, 512 (9th Cir. 1987) (citing 42 U.S.C. § 416(i)(2)(G)). Evidence that, at most, indicates a mental deterioration after the hearing is not material because it does not "relate to the period on or before the date of the ALJ's decision." 20 C.F.R. § 404.976(b)(1). However, if the claimant's disability arises from a long-term mental impairment, and the issue of mental capacity was "squarely before" the ALJ or Appeals Council, then evidence of later mental deterioration is material if it relates to the claimant's mental condition at the time of the hearing. *See Burton v. Heckler*, 724 F.2d 1415, 1417 (9th Cir. 1984).

The good cause requirement is met if the claimant could not have obtained the evidence at the time of the administrative proceeding. *Key v. Heckler*, 754 F.2d 1545, 1551 (9th Cir. 1985). Courts interpret good cause liberally where a remand to consider new evidence would not result in prejudice to the Commissioner. *Zuniga v. Colvin*, No. 3:13-CV-01678-CRB, 2015 WL 1069093, at *6 (N.D. Cal. Mar. 11, 2015) (citing *Burton*, 724 F.2d at 1417). If new information surfaces after the Commissioner's final decision and the claimant could not have obtained that evidence at the time of the administrative proceeding, the good cause requirement is satisfied. *Key*, 754 F.2d at 1551.

**DISCUSSION**

Pool moves to remand the case to the Commissioner to consider the additional evidence. Mot. 1; Weems Decl., Exs. 1-4. In the alternative, Pool moves to set a revised summary judgment briefing schedule, presumably so that Pool can challenge the substance of the ALJ's decision. Mot. 1. The Commissioner opposes the motion to remand because the additional evidence is neither new nor material. Oppo. 2.

**I. SENTENCE SIX REMAND**

Pool argues that the additional evidence warrants a Sentence Six remand because it bears on whether Pool's mental disability at the time of her hearing could have been expected to last for 12 months, and in particular evidences "repeated episodes of decompensation" within the 12 month window of Listing 12.04 (affective disorders), establishing a disability onset date prior to

April 2014. Mot. 2. The Commissioner responds that a remand is not warranted for the hospitalization records because the additional evidence is not related to the period on or before the date of the ALJ decision and is not material to that decision. Oppo. 2-3. The Commissioner asserts that remand is not warranted for the other medical records (from Dr. Malnekoff and Dr. Shah) and the 2015 disability decision because those records are not related to the pre-October 2013 period, are not material to the ALJ's decision, and good cause has not been show for Pool's failure to incorporate them into the administrative record. I will address each set of records in turn.

**A. Hospitalization Records**

The April to June 2014 hospitalization records warrant remand because they bear on the severity of Pool's mental impairments, particularly her depression, at the time of the ALJ's decision.

Pool argues that the hospitalization records are material because "[i]t is reasonably possible that ALJ Kwon in considering evidence of Pool's suicide attempt within 5 months of the Commissioner's adverse disability determination could find that Pool was in fact under a disabling mental impairment prior to the date of that adverse disability determination." Mot. at 5. The Commissioner counters that the hospitalization records are not material because they do not relate to the period on or before October 24, 2013. Oppo. 4-5.

I conclude that the hospitalization records reasonably relate to Pool's condition at the time of the ALJ's decision because Pool's mental health impairments are long-term impairments that were specifically considered by the ALJ. The Ninth Circuit in *Burton* held that a new psychological test showing that the claimant suffered from a severe mental impairment warranted a remand even though the test was dated after the ALJ decision. *Burton*, 724 F.2d at 1417. There, the new test was material because Burton's mental impairment arose from his chronic alcoholism, an issue that was "squarely before" the ALJ, and thus the evidence of later "mental deterioration" was probative of Burton's condition at the hearing. *Id.* Pool's hospitalization records are similarly probative of her condition at the time of the ALJ's decision because the evidence at the hearing established that Pool's depression was a long-term issue squarely before the ALJ. During

the hearing, the ALJ specifically asked Pool about her mental condition, including whether she sees someone for mental health, how long the sessions are, how often they are, and whether she is prescribed antidepressants. AR 66-67. At the time, Pool had been seeing Dr. Malnekoff for over seven years. *Id.* at 66. In addition, the ALJ's decision discusses Pool's mental condition in depth; it acknowledges that Pool suffers from an affective disorder, but concludes that her condition was not severe enough to qualify for disability. AR 21-25. The hospitalization records bear directly on the severity of Pool's mental impairments, most likely her depression, because they detail a suicide attempt that occurred shortly after the ALJ decision.

Moreover, the hospitalization records are material because they indicate that Pool's mental state at the time of the hearing was significantly worse than the ALJ concluded. Shortly after her suicide attempt, Pool stated that "I didn't realize suicidal thoughts were abnormal. They were normal for me." Weems Decl., Ex. 1 at 1. This indicates that Pool was having suicidal thoughts prior to her suicide attempt, and that her mental impairments at the time of the hearing were more significant than the ALJ believed. The hospitalization records also support the ALJ's own acknowledgement that Pool's depression was a recurring problem. *See* Weems Decl., Ex. 1 at 4 ("Diagnosis . . . Axis I: Major depressive disorder, recurrent, severe . . . ."); *see also id*. at 35 ("[Pool] has had thoughts of suicide in the past . . . She has been depressed "ever since [she] can remember," worse lately. Denise has been feeling hopeless, helpless, and guilty."). In addition, evidence relating to the suicide attempt would likely affect the weight the ALJ gave to the opinions of Dr. Malnekoff, Pool's longtime therapist, whose opinion the ALJ had given "little weight." AR 30. Dr. Malnekoff had stated in 2012 that Pool had anxiety, was depressed, and had PTSD. AR 538-39 [Dkt. No. 10-9]. The hospitalization records following her suicide attempt validate Dr. Malnekoff's account of Pool's mental condition.[5]

The hospitalization records have at least a reasonable possibility of changing the

---

[5] The Commissioner argues that Dr. Malenkoff's 2015 opinion supports the Commissioner's position that the hospitalization records address a different time period because Dr. Malenkoff admits that prior to April 2014, "there was no evidence of suicidality." Oppo. 4 (citing Weems Decl., Ex. 2 at 3). However, the fact that plaintiff had suicidal thoughts earlier than April 2014, but kept them hidden, is confirmed by the hospital records themselves. Weems Decl. Ex. 1 at 2, 35.

8

Secretary's decision. The records could affect at least two of the requirements listed in paragraph B for affective disorders: (i) marked difficulties in maintaining social function, and (ii) marked difficulties in maintaining concentration, persistence, or pace. 20 C.F.R. § Pt. 404, Subpt. P, App. 1, § 12.04 (listing the requirements for affective disorders). Even without the new evidence, the ALJ had found that Pool experienced "mild to moderate difficulties" in these areas. AR 23-24. The new evidence of Pool's suicide attempt indicates both her social function and ability to maintain persistence were significantly worse than was evident to the ALJ. And even if on remand the ALJ does not find that Pool's impairments medically equal a listed impairment, the records will certainly be relevant to the ALJ's RFC determination because they indicate that Pool's depression was more severe at the time of the ALJ's decision than previously apparent.

The Commissioner compares the present case to *Sanchez v. Sec'y of Health & Human Servs.*, 812 F.2d 509, 511 (9th Cir. 1987). In *Sanchez*, the court found that new evidence of the claimant's organic brain disorder (manifesting as memory loss and speech problems) did not warrant a remand because it was not probative of his condition at the time of his hearing. *Sanchez*, 812 F.2d at 511. Sanchez originally claimed a physical, not mental, impairment, and merely reported "some loss of concentration, depression and anxiety" as a result of his back condition. *Id.* In contrast, Pool's mental impairments are longstanding, alleged in her original claim, and discussed extensively in the ALJ decision. AR 21-25. Therefore, while the court in *Sanchez* found the claimant's new evidence "at most [indicates] mental deterioration after the hearing," for a condition not discussed during the hearing, *Sanchez*, 812 F.2d at 511, the hospitalization records reasonably weigh on Pool's acknowledged mental impairments at the time of the hearing.

The Commissioner also argues that the new evidence is not material because the record was fully developed for the ALJ's decision. Oppo. 5. Whether the record was adequately developed, however, is not the relevant inquiry. Even assuming the ALJ had legally sufficient information before him to decide Pool's claim, that does not mean that later-acquired evidence is immaterial. The Commissioner further argues that the motion should not be granted because Pool's counsel had an opportunity to review the evidence of record at the hearing and did not request additional development. Oppo. 5. Again, that is irrelevant to whether later-acquired

1  evidence that relates to the time frame under consideration is material. The Commissioner has
2  pointed to no authority to suggest that later-acquired information is not material where the record
3  before the ALJ was otherwise "fully developed" or plaintiff did not object to the evidence of
4  record during the hearing.

In sum, remand is warranted so that ALJ can consider the material hospitalization records.[6]

### B. Dr. Malnekoff Opinion

Pool also seeks remand so the Commission can consider a July 20, 2015 summary of treatment authored by her longtime psychotherapist, Dr. Malnekoff. Weems Decl., Ex. 2.

#### 1. Materiality

Pool argues that Dr. Malnekoff's summary is material evidence that should be remanded because (i) Dr. Malnekoff's notes substantiate her and Pool's long treatment relationship; and (ii) Dr. Malnekoff's notes relate to the severity of Pool's mental impairments at the time of the ALJ's decision. Mot. 4-7. The Commissioner contends that the Malnekoff opinion is not material because it does not relate to the time period on or before the ALJ's decision. Oppo. 7.

Dr. Malnekoff's opinion is material to Pool's condition prior to and at the time of the ALJ's decision in 2013 because parts of it specifically discuss the severity of her depression during that timeframe. For instance, Dr. Malnekoff states that "[t]hroughout [Pool's] treatment prior to 2014 . . . . [s]he continued to deteriorate cognitively," and that as a result of this deterioration "[s]he became very frustrated and her limitations caused a great deal of discouragement and depression for her." Ex. 2 at 2. Malnekoff notes that Pool attempted suicide because "[s]he had become so frustrated with being unable to get medical help that she needed that she overdosed." *Id.* Although other parts of the opinion relate to Pool's mental state after the ALJ's decision, many of the passages discuss the relevant 2011-2013 timeframe. It is reasonably possible that consideration of the Malnekoff summary would have changed the outcome of the ALJ's decision. Therefore, Dr. Malnekoff's summary is material.

---

[6] Because these records did not exist at the time of the ALJ's decision and because Pool submitted them to the Appeals Council during the pendency of the administrative proceedings "good cause" has been shown. *See Burton*, 724 F.2d at 1417-18.

10

### 2. Good cause

Pool argues that Dr. Malnekoff's summary meets the good cause requirement because it was not in existence at the time of the ALJ's decision and was created, in part, to provide "retrospective opinions" "formed in light" of the suicide attempt. Mot. 4-5. The Commissioner responds that the good cause requirement is not satisfied because (i) the record leading to the ALJ's decision was fully developed, and if there were any gaps in the treatment records from Dr. Malnekoff, Pool had ample opportunity to fill them prior to the ALJ hearing or Appeals Council decision; and (ii) the Social Security Act does not authorize remand of a claim based on evidence gathered for a subsequent claim, such as the Malnekoff summary. The Commissioner contends that the new evidence should instead be (and here actually was) incorporated into a subsequent claim. Oppo. 6-7.

I find that good cause is established for Dr. Malnekoff's summary. Although Pool should have (and did) ask Dr. Malnekoff for an opinion of Pool's mental health prior to 2013, *see* AR 538-39, Dr. Malnekoff's 2015 summary is in part informed by the suicide attempt that occurred after the ALJ hearing. In essence, portions of Dr. Malnekoff's 2015 summary could not have been obtained at the time of the ALJ decision because Pool's mental impairments had not outwardly manifested in the manner that they ultimately did. *See Lebus v. Harris*, 526 F. Supp. 56, 60 (N.D. Cal. 1981) ("Courts have recognized that a psychiatric impairment is not as readily amenable to substantiation by objective laboratory testing as is a medical impairment and that consequently, the diagnostic techniques employed in the field of psychiatry may be somewhat less tangible than those in the field of medicine." (citations omitted)). While the Malnekoff summary was not submitted to the Appeals Council, given the lack of prejudice to the Commissioner (considering that this matter will be remanded in any event to consider the hospitalization records), and Malnekoff's prior testimony to the ALJ, good cause has been established. *See Delaney v. Comm'r of Soc. Sec.*, No. CIV. 09-807-AC, 2010 WL 5439740, at *11 (D. Or. Dec. 28, 2010) (holding that remand to consider a doctor's new report was non-prejudicial because it was "merely a clarification and expansion" of his prior testimony before the ALJ); *Held v. Colvin*, 82 F. Supp. 3d 1033, 1043 (N.D. Cal. 2015) (finding the good cause requirement satisfied for a new medical

11

report despite it being first introduced to the district court because the report was from claimant's "long-standing provider to demonstrate his ongoing pain"); *Ready v. Astrue*, No. 3:11-CV-00032-KI, 2012 WL 171291, at *6 (D. Or. Jan. 20, 2012) (finding the good cause requirement met for records newly introduced to the district court because they related to ongoing treatment by claimant's doctor whose previous opinions were considered by the ALJ); *Embrey v. Bowen*, 849 F.2d 418, 424 (9th Cir. 1988) (finding good cause because "[r]ather than attempting to raise new issues, the [new evidence] represents the ongoing medical evaluation of a consulting physician who had already participated in the disability determination process").

The Commissioner relies on *Califano v. Sanders*, 430 U.S. 99, 108 (1977), to argue that Pool is attempting to rely on evidence created for and submitted with her 2014 benefits application, to "reopen" her 2011 claim for benefits. However, *Califano* simply held that an ALJ decision refusing to reopen a claim for disability benefits was not subject to judicial review. *Id*. at 104-07. The question here is different; when does new evidence merit a Sentence Six remand? Moreover, Pool does not need to provide, as the Commissioner argues (Oppo. 7), a reason why the new evidence should be included in this claim rather than her subsequent claim. Filing a new claim and moving for a remand are not mutually exclusive actions. Each is independently authorized, and each may proceed in parallel. Indeed, the benefit of parallel claims is apparent in this case; Pool has received ongoing disability benefits from April 2014 as a result of her subsequent claim, and may receive back-benefits from 2011 as a result of the present claim. The ability to file a subsequent claim does not prevent Pool from meeting the good cause requirement for evidence that is material to the 2011-2013 timeframe.

**C. Dr. Shah's Records**

Pool seeks to remand for the Commissioner to consider records dating from December 2014 through May 2015 from Dr. Shah, who Pool saw for medication and treatment of her mental health impairments.

**1. Materiality**

Pool argues that Dr. Shah's records are material because they describe changes made to Pool's psychiatric medication regime to include Trazodone, an antidepressant. Mot. 6. The

1   Commissioner contends that the Shah records are not material because they do not relate to the
2   time period on or before the ALJ's decision. Oppo. 7.

3   I conclude that Dr. Shah's records are material because they touch on the history of Pool's
4   mental health impairments, as well as the severity of her depression at the time of the ALJ
5   decision. As discussed above, *Burton* held that the result of a psychological test administered after
6   an ALJ decision was material because the claimant's mental condition was an issue before the
7   Commissioner. *Burton*, 724 F.2d at 1417. Pool's Trazodone prescription is essentially a similar
8   kind of result. Prior to Pool's suicide attempt, she was kept off of antidepressants, despite having
9   a recognized need for them, because they might worsen her other medical conditions. *See* AR
10  539; Weems Decl., Ex. 2 at 2 ("Throughout her treatment prior to 2014 it was determined by her
11  physicians that she was unable to take medications for anxiety and depression due to the high risk
12  these medications posed to her serious medical condition."). After her suicide attempt, she was
13  quickly prescribed several antidepressants (Weems Decl., Ex. 3 at 4), ultimately settling on
14  Trazadone. *Id.* at 7-11. This shift in medical posture illustrates a new understanding of the
15  direness of Pool's depression – that it was serious enough to warrant an antidepressant
16  prescription despite the possibility of adverse effects on her other medical problems. Thus, Dr.
17  Shah's records relating to Pool's Trazodone prescription are material because they illustrate the
18  severity of Pool's depression leading up to her suicide attempt.

19  **2. Good cause**

20  Pool argues that Dr. Shah's records meet the good cause requirement because they were
21  not in existence at the time of the ALJ's decision. Mot. 4-5. The Commissioner contends that the
22  good cause requirement is not satisfied for the same reasons as for the Dr. Malnekoff opinion. *See*
23  Oppo. 6-7.

24  Dr. Shah's records meet the good cause requirement because they could not have been
25  obtained prior to the ALJ's determination. Dr. Shah prescribed Trazadone to Pool specifically
26  because of her suicide attempt, which happened several months after the ALJ decision. Pool could
27  not have obtained records relating to the prescription in October 2013, simply because the records
28  did not yet exist. Therefore, she has good cause for not providing them to the ALJ. *Cf. Burton*,

724 F.2d 1418 (finding good cause to remand new psychological tests because they did not exist at the time of the ALJ's decision). While some portion of these records could have been submitted to the Appeals Council (those dated between December 2014 and the Appeal's Council decision in March 2015), her failure to do so does not undermine good cause for those few records where, as here, there is little prejudice to the Commissioner considering that this claim is being remanded for consideration of the hospitalization records.[7]

**D.  2015 Benefits Award**

Finally, Pool seeks remand for consideration of the Commissioner's October 2015 decision awarding Pool benefits on her subsequent application. Weems Decl., Ex. 4. The Commissioner argues that the October 2015 decision granting disability benefits is not material because the decision was almost two years after the period at issue in this case, and was based on medical records that were obtained after the period at issue in this case. Oppo. 6. Pool does not discuss in her motion why the 2015 decision is material. I agree with the Commissioner that it is not.

The October 9, 2015 decision granting benefits is not material because it does not bear on Pool's condition during the time period relevant for this case. Pool appears to include the 2015 decision because the Commissioner subsequently found Pool disabled, but Pool does not point to, nor can I find, any evidence in the 2015 decision itself that discusses Pool's impairments prior to the April 2014 onset date for disability found in that decision. Therefore, the 2015 decision does not warrant remand.

**II.  REVISED SUMMARY JUDGEMENT BRIEFING SCHEDULE**

Because I find that this case warrants remand to the Commissioner,  Pool's motion to revise the summary judgment briefing schedule to allow her to challenge the ALJ's decision on the merits is moot.

---

[7] Cases discussing the good cause requirement recognize that claimants should not be allowed to, after an adverse ALJ decision, go out and try and find more favorable testimony to support their appeal. *Key*, 754 F.2d at 1550 ("The 'good cause' requirement would be meaningless if a claimant, after losing on his disability claim, could seek out and introduce new evidence from 'a new expert witness who might better support his position.'"). There is no indication that the Dr. Shah records were the result of that type of motivation; instead the records themselves demonstrate they were created in response to Pool's need for further psychiatric treatment following the suicide attempt.

**CONCLUSION**

For the reasons above, I GRANT IN PART and DENY IN PART Pool's motion for a Sentence Six remand, and REMAND the case for further proceedings consistent with this Order.

**IT IS SO ORDERED**.

Dated: August 16, 2016



WILLIAM H. ORRICK
United States District Judge