UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DENISE ANNETTE POOL,<br><br>Plaintiff,<br><br>v.<br><br>CAROLYN W. COLVIN,<br><br>Defendant. | Case No. 15-cv-02061-WHO<br><br>**ORDER ON CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br><br>Re: Dkt. Nos. 24, 25, 27 |

## INTRODUCTION

Currently before me are the parties' cross-motions for summary judgment in Denise Annette Pool's appeal of the partial denial of her claim for disability insurance benefits. Pool argues that the Administrative Law Judge's ("ALJ") decision finding that she was not disabled between May 12, 2009 to September 1, 2011 is not based on substantial evidence. I find that the ALJ provided clear and convincing reasons to support the determination that Pool was only disabled as of September 1, 2011. Accordingly, the defendant's motion for summary judgment is GRANTED and Pool's motion for summary judgment is DENIED.

## BACKGROUND

### I. PROCEDURAL HISTORY

On October 26, 2011, Pool applied for Title II Social Security Disability Insurance Benefits ("DIB"), alleging a disability onset date of August 10, 2011, due to mental health and cognitive issues. AR 172–75. She later amended her alleged disability onset date, due to her mental health issues, back to May 12, 2009. AR 611.

Pool's claim was denied initially on March 1, 2012, and upon reconsideration on November 7, 2012. AR 120–24, 127–31. She filed a written request for a hearing, a hearing before an ALJ was held, and in a decision dated October 24, 2013, the ALJ found that Pool was

not disabled. AR 16–38. Pool appealed and, after a suicide attempt in April 2014, submitted new evidence regarding that hospitalization and her subsequent treatment ("new evidence"). AR 8. On March 16, 2015, the Appeals Council declined to review the ALJ's denial and declined the request to consider the new evidence on the grounds that the new evidence was "about a later time," and therefore not material to "the decision about whether [Pool was] disabled beginning on or before October 24, 2013." AR 2.

Pool timely sought judicial review in this Court, and on August 16, 2016, I granted her motion for a sentence six remand.[1] Dkt. No. 19. I concluded that her new evidence was material to the existence and severity of her mental impairments at the time of the ALJ's 2013 decision. Dkt. No. 19.

On remand, the ALJ held a second hearing. AR 608–55. On September 1, 2017, the ALJ issued a partially favorable decision. AR 581-97. As discussed in more detail below, the ALJ rejected Pool's claim of disability starting in May 2009, but concluded there was sufficient evidence to find that she was disabled as of September 1, 2011, when she reinitiated mental health treatment. AR 581–97.

Pool now seeks a sentence four remand, appealing solely the ALJ's finding that she was not disabled from May 12, 2009 – her alleged onset date – to September 1, 2011, the date the ALJ concluded she was disabled.[2] Dkt. No. 24. Defendant cross-moves for summary judgment, arguing the ALJ's partial denial is supported by substantial evidence. Dkt. No. 25.[3]

---

[1] "Sentence six remands may be ordered in only two situations: where the Commissioner requests a remand before answering the complaint, or where new, material evidence is adduced that was for good cause not presented before the agency." *Akopyan v. Barnhart*, 296 F.3d 852, 854 (9th Cir. 2002).

[2] A sentence four remand is appropriate where the District Court determines that "the agency erred in some respect in reaching a decision to deny benefits," and the case is returned to the agency for rehearing to address the concerns of the District Court. *See Akopyan*, 296 F.3d at 854.

[3] In an October 9, 2015 decision, based upon a subsequent application for benefits, Pool was determined to be disabled as of April 2014. AR 586. Therefore, the only period during which Pool argues she was disabled but has not been provided benefits is May 12, 2009 through September 1, 2011.

2

## II. SEPTEMBER 1, 2017 ALJ DECISION

The ALJ utilized the five-step sequential evaluation to determine Pool's disability claim. AR 587–88; *see* 20 C.F.R. §§ 404.1520(a), 416.920(b). At step one, the ALJ determined that Pool met the insured status requirements of the Social Security Act through March 31, 2015, as Pool had not engaged in any "substantial gainful activity" since her "alleged onset date." AR 588. At step two, the ALJ found that—since August 10, 2011—Pool had the following severe impairments: (i) anxiety disorder; (ii) major depression; (iii) post-traumatic stress disorder; (iv) seizure disorder; (v) antiphospholipid syndrome; and (vi) migraine headaches. AR 588–89.

At step three, the ALJ concluded that Pool's impairments did not meet or equal the severity required for the listed impairments. AR 589. The ALJ then determined Pool's residual functional capacity ("RFC"). AR 590–95. The ALJ concluded that, prior to September 1, 2011, Pool had the RFC to perform a full range of work at all exertional levels but with the following non-exertional limitations: no work requiring climbing of ladders, ropes and scaffolds, no work at unprotected heights or with heavy hazardous machinery, and no driving. AR 590–94. The ALJ further found that, for primary duties, Pool could perform routine tasks with minimal changes from day-to-day, with no interaction with the general public and up to occasional interaction with supervisors. *Id.*

For the period beginning on September 1, 2011, the ALJ similarly concluded that Pool had the RFC for a full range of work at all exertional levels but with the following non-exertional limitations: no work requiring climbing of ladders, ropes and scaffolds, no work at unprotected heights or with heavy hazardous machinery, and no driving. AR 594–95. For primary duties, the ALJ again concluded Pool could perform routine tasks with minimal changes from day-to-day with no interaction with the general public and up to occasional interaction with supervisors. However, as opposed to the prior period, the ALJ also concluded that, given Pool's cognitive deterioration and reentry to therapy in August and September 2011, she would require frequent absences of approximately four days per month or more on a regular basis as of September 1, 2011. *Id.*

At step four, the ALJ found that given her RFC, prior to September 1, 2011, there were

3

jobs that existed in significant numbers in the national economy that Pool could have performed. AR 596. Conversely, the ALJ found that, beginning on September 1, 2011, given the frequency of Pool's expected absences there were no jobs that exist in significant numbers in the national economy that Pool could have performed. AR 595–97. As a result, the ALJ concluded that prior to September 1, 2011, Pool was not disabled as defined by the Social Security Act, but on that date she became disabled and continues to be disabled through the date of the ALJ's decision. *Id.*

In drawing a significant RFC distinction between the periods prior to and after September 1, 2011, the ALJ relied on evidence that showed Pool's conditions worsening in August 2011. Specifically, the ALJ noted that while Pool had suspended her therapy for six months in 2011, she restarted it in September 2011. According to Dr. Malnekoff's treatment notes and tests results, Pool showed increased emotional lability and "significant cognitive and memory problems," in September through November 2011. AR 595.

For the period prior to September 1, 2011, the ALJ noted that while Pool had been seeing Dr. Malnekoff from October 2006 through March 2011 (and resuming after a six-month break in September 2011), there was "no record of therapy notes" from 2006 through March 2011 to corroborate Pool's claim she suffered from significant mental and cognitive impairments during that time.[4] AR 591-92. The ALJ also relied on the fact that Pool stopped seeing Malnekoff from March 2011 through August 2011 as evidence that Pool's conditions were not as limiting as she claimed. AR 591. With respect to her antiphospholipid and seizure disorders as well as her history of migraines, the ALJ noted that these disorders and her migraines were being controlled by her medicines during 2010 and 2011. AR 591. Finally, the ALJ found that the medical record did not "corroborate significant mental health symptoms" given the absence of "regular abnormal mental status exams" and no ongoing interventions or need for inpatient treatment. *Id*. at 591-92.

The ALJ characterized Pool's daily life activities during the pre-September 2011 period as a "somewhat normal level and range of daily activities and interaction." AR 590-92. The ALJ noted that Pool had completed a two-semester long course to become a pharmacy technician in

---

[4] The ALJ noted there were therapy treatment notes from September 2011 on. *Id*.

4

2011 and worked for three weeks in 2011, activities that were inconsistent with "extreme limitations" claimed by Pool. *Id.*

The ALJ then addressed various consultative examinations from December 2011, January 2012, June 2013, September 2013, January 2017, generally giving those reports little to some weight as to the pre-September 1, 2011 period and some to significant weight for the post-September 1, 2011 period. AR 592-94. The ALJ treated Pool's husband's testimony the same way--giving it little weight to support significant limitations in the pre-September 2011 period and great weight to support Pool needing frequent absences from work after September 1, 2011, due to her "worsening conditions." AR 594.

**LEGAL STANDARD**

**I.    DISABILITY DETERMINATION**

A claimant is "disabled" as defined by the Social Security Act if: (1) "he is unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment;" and (2) the impairment is "of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy." 42 U.S.C. § 1382c (a)(3)(A)–(B). The ALJ performs a five-step sequential analysis to determine if an individual is disabled within the meaning of the Social Security Act required under 20 C.F.R. § 404.1520 (a)(4)(i)–(v). *Hill v. Astrue*, 698 F.3d 1153, 1159 (9th Cir. 2012). If at any point within these five-steps, the ALJ determines that the claimant is either disabled or not disabled, the ALJ need not move on to the next step. 20 C.F.R. § 404.1520(a)(4).

At the first two steps of the evaluation, the claimant must establish that he: (1) is not performing "substantial gainful activity," and (2) is under a "medically severe" impairment or combination of impairments. *Id.* at § 416.920 (a)(4)(i)–(ii). Substantial gainful activity is defined as "work activity that involves doing significant physical or mental activities" (20 C.F.R. § 404.1572(a)) typically completed for the purpose of payment or profit regardless if profit is realized. 20 C.F.R. § 404.1572(b). For an impairment to be medically severe, it must "ha[ve] lasted or can be expected to last for a continuous period of not less than [12] months" or "can be

5

expected to result in death." 42 U.S.C. § 1382c (a)(3)(A); 20 C.F.R. §§ 416.909, 404.1509.

At the third step, the claimant must establish that his impairment or combination of impairments meets or medically equals a listed impairment provided in Part 404, Subpart P, Appendix 1 of the regulations as described by 20 C.F.R. §§ 404.1525, 404.1526, 416.925, and 416.926. *Id.* at § 416.920(a)(4)(iii). If the claimant's impairment does not meet or equal one of the listed impairments, or does not satisfy the duration of disability requirements, the ALJ is to make a residual functional capacity determination based on all the evidence in the record before proceeding to the fourth step. *Id.* at § 416.920(e). This determination is used to evaluate the claimant's work capacity for steps four and five. *Id.* Residual functional capacity refers to one's ability to do physical and mental work activities despite any limitations resulting from impairment. *Id.* at §§ 404.1545(a), 404.1594(a)(4).

At step four, the claimant must establish that his impairment prevents him from performing relevant work he or she did in the past ("PRW"). *Id.* at § 416.920(a)(4)(iv). PRW includes: (i) substantially gainful activity; (ii) performed in the past 15 years from the date the disability is established; (iii) which the individual performed long enough to have learned how to do. *Id.* at §§ 404.1560(b), 404.1565. PRW can be considered "either as the claimant *actually performed* it or as *generally performed* in the national economy." *Id.* at § 404.1560(b)(2) (emphasis added).

The burden to illustrate entitlement to DIB is on the claimant at all times during steps one through four; however, if the claimant demonstrates an inability to perform PRW at step four, the burden shifts at step five. *Andrews v. Shalala*, 53 F.3d 1035, 1040 (9th Cir. 1995). At the fifth step, the ALJ considers the claimant's residual functional capacity in relation to his age, level of education, and experience in consideration of whether the claimant is able to do other work in the national economy. 20 C.F.R. §§ 416.920(a)(4)(v), 416.960(c)(1)–(2). If it is determined that the claimant is unable to do other work, he is disabled.

## II. STANDARD OF REVIEW

Under 42 U.S.C. § 405(g), a district court reviews the final decision denying benefits to determine whether the findings are supported by substantial evidence and free of legal error. *Smolen v. Chater*, 80 F.3d 1273, 1279 (9th Cir. 1996). "Substantial evidence means more than a

mere scintilla but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Shalala*, 53 F.3d at 1039–40. The Court must review the record as a whole and consider adverse as well as supporting evidence. *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006). Where evidence is susceptible to more than one rational interpretation, the ALJ's decision must be upheld. *Morgan v. Comm'r of the Soc. Sec. Admin.*, 169 F.3d 595, 599 (9th Cir. 1999). "However, a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Robbins*, 466 F.3d at 882 (quoting *Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989)).

## DISCUSSION

Pool argues, first, that the ALJ wholly failed to determine what (if any) medically determined impairments Pool had as of May 2009 through August 10, 2011 when, as noted, the ALJ determined that Pool was disabled due to her impairments and the amount of work she would miss. Mot. at 6. Relatedly, Pool notes that at certain points in the decision, the ALJ incorrectly reports that Pool's *alleged* onset date was August 2011, and that error likewise requires remand. *Compare* AR 586 (noting alleged onset of August 2009) *with* AR 588 (noting alleged onset as August 10, 2011).

However, it appears that the ALJ's use of "August 10, 2011" in the Step 3 and Step 4 headings in the September 1, 2017 Order was a typographical error, and the ALJ was considering Pool's alleged May 2009 onset date. That determination is supported by two points. First, the "severe impairments" that the ALJ indicated were existing as of August 10, 2011 (AR 588, 589) were consistent throughout Pool's medical records. The only question was when the symptoms and limitations from those impairments became disabling (which the ALJ concluded occurred as of September 2011). Second, the ALJ clearly reviewed evidence and argument about Pool's conditions and limitations between 2009 and 2011. *See, e.g.*, AR 590-91 (noting lack of evidence from alleged "onset date to August 2011" and reviewing medical records from 2009 and 2010); Transcript at 611 (ALJ commenting that the relevant evidence was from 2009 through 2014). The typographical errors do not undermine the ALJ's analysis or opinion and the case will not be

7

remanded on that ground.[5]

Pool more substantively asserts that the ALJ erred by failing to properly credit treating physicians' opinions that supported her claim of disability as of May 12, 2009 and continuing through September 1, 2011. Mot. at 6. A treating physician's opinion "is not binding on an ALJ with respect to the existence of an impairment or the ultimate determination of disability." *Tonapetyan v. Halter*, 242 F.3d 1144, 1148 (9th Cir. 2001) (citation omitted). That said, in order to properly reject the opinion of a treating or examining doctor when it is uncontradicted by another doctor, the ALJ must state "clear and convincing reasons" for doing so. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995). If the treating or examining physician's opinion is contradicted by another physician, however, an ALJ may reject the treating or examining physician's opinion if she states "specific and legitimate reasons" that are supported by substantial evidence. *Id.* at 830–31. If a treating physician's opinion is not given "controlling weight," either because it is not "well-supported" or because it is inconsistent with other substantial evidence in the record, factors that determine how much weight the opinion should be given include the "[l]ength of the treatment relationship and the frequency of examination" by the treating physician, and the "nature and extent of the treatment relationship" between the patient and the treating physician. *Orn v. Astrue*, 495 F.3d 625, 631 (9th Cir. 2007).

Pool contends that the ALJ did not provide clear and convincing or specific and legitimate reasons for not accepting the opinions of her medical sources—Drs. Duncan, Mendius, and Newkirk—that Pool would miss significant amounts of work during the period of May 12, 2009, through September 1, 2011. Mot. at 6–7. Defendant responds that the ALJ's determination is supported by substantial evidence because there is no evidence of a disabling medical condition prior to September 1, 2011. Oppo. at 4–5.

---

[5] Solely in reply, Pool argues that because the ALJ did not mention in the 2017 Decision some non-severe impairments that were identified in the ALJ's prior Decision, that error requires remand to develop a record from which the ALJ can determine whether those prior-recognized non-severe impairments had deteriorated. Reply at 2-4. I will not address an argument raised for the first time on reply where Pool identifies *no evidence* that these conditions either were discussed with the ALJ on remand or would weigh on the question of whether she was disabled due to symptoms and limitations from her non-severe conditions that could have caused her to miss more than four days a month of work during the May 2009 through August 2011 time period.

8

In a single medical source statement ("Seizures Residual Functional Capacity" questionnaire) dated June 17, 2013, examining physician Dr. Mendius identified Pool's numerous mental health problems as well as symptoms from her epilepsy and seizure medications. Mendius estimated that Pool had an average of five to ten migraines a month and opined that Pool would be unable to work more than four days a month due to her migraines and seizures. AR 528. As relied on by Pool for purposes of this motion, in response to the question of "[w]hat is the earliest date that the description of symptoms and limitations in this questionnaire applies?" Mendius indicated "age 15." AR 528.

Pool complains that the ALJ ignored this "date" and erred in giving Mendius's opinions only "partial weight" for the pre-September 2011 period.[6] However, Mendius's opinion, given in 2013, that Pool would miss four days of work a month is unanchored to *any* start date. In answer to a separate question, Mendius indicated that Pool exhibited some symptoms and limitations related to her disability since she was 15 years old. Mendius did not specify what the symptoms and limitations were at that time or at what point they became disabling. That opinion did not require that the ALJ infer – absent other evidence – that Pool had since she was 15 years old consistently missed four days of work (or presumably school) given her symptoms and limitations. Instead, the ALJ appropriately looked at the Pool's treatment records from 2009 through 2011 and Pool's activities to conclude that only as of September 1, 2011 would absences from work become a problem.[7]

Pool also argues that the ALJ disregarded the opinion of Dr. Duncan, a treating neurologist. Like Mendius, in September 2013 Duncan filled out a "Seizures Residual Functional Capacity" questionnaire indicating that, as of that date, Pool suffered from significant mental health and seizure-related symptoms and that she would miss more than four days of work each

---

[6] The ALJ gave only partial weight to Mendius' opinions for the pre-September 2011 period because there was no evidence of ongoing treatment of Pool by Mendius and the other evidence showed a worsening of Pool's health conditions starting in August 2011. AR 593.

[7] The ALJ points out that Pool received no mental health treatment from March to September 2011, during that time Pool was not taking any mental health medications, and in July 2010 Pool's doctors reported no recent memory of any epileptic seizures and listed Pool's migraines as well-controlled.

9

1 month. AR 533. In answer to the separate question, Duncan indicated that July 2010 was the "earliest date" that symptoms and limitations related to the disabling condition occurred, without describing what the symptoms and limitations were. *Id*. As with Mendius, the ALJ gave Duncan's opinions only partial weight up to August 2011 and substantial weight thereafter, when Duncan's opinions were supported by other medical records. The ALJ did not err with respect to Duncan for the same reasons that the ALJ did not err with respect to Mendius.

Finally, Pool faults the ALJ for similarly failing to credit the opinions of Dr. Newkirk, a treating neurologist and signer of another "Seizures Residual Functional Capacity" questionnaire signed in September 2013. In answer to the separate questions, Newkirk opined that Pool's unspecified symptoms or limitations started in 2002 and that, as of 2013 Pool would miss at least four days of work a month. AR 545. The ALJ did not err with respect to Newkirk for the same reasons stated regarding the opinions of Mendius and Duncan.

In sum, the ALJ identified substantial and undisputed evidence in the record that shows a worsening of Pool's condition as of August 2011. The vague comments of Drs. Mendius, Duncan, and Newkirk about when symptoms and limitations appeared, without specification of what symptoms or limitations appeared when, do not address (much less contradict) the ALJ's determination of the date Pool would start to be unable to work for more than four days a month.

## CONCLUSION

Because the ALJ's decision was supported by specific and clear reasons, the government's motion for summary judgment is GRANTED and the Pool's motion for summary judgment is DENIED.

**IT IS SO ORDERED.**

Dated: February 12, 2019

William H. Orrick
United States District Judge